**Louise CRONIN, Individually and as a Partner, d/b/a Barefoot Farms, Appellant,**

v.

**Jack L. BACON, Appellee.**

No. 2–91–150–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 8, 1992.

Rehearing Denied Oct. 20, 1992.

Rehearing Overruled in Part and Granted in Part Only to the Extent of Assessing Costs Oct. 20, 1992.

Richard H. Kelsey, P.C., Denton, for appellant.

Thompson & Knight, Laurie Kratky Dore, Austin, for appellee.

Before HILL, FARRIS and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, Louise Cronin, individually and doing business as Barefoot Farms, appeals a jury finding of breach of contract, deceptive trade practices, fraud, and negligence in her business dealings with Jack L. Bacon, appellee. The trial court granted Cronin's motion to disregard the jury findings and judgment n.o.v. in part.[1] The trial court entered judgment for $28,979.25, plus $2,000.00 additional damages pursuant to the D.T.P.A.

Reversed and remanded with instructions.

In 1983, Barefoot Farms, a leading horse stud farm owned by Cronin, advertised that a champion stallion named "Dandy Impression" was available for breeding. Bacon entered into a "stallion service contract" with Barefoot Farms for the 1984 breeding of his mare, Musette, to Dandy Impression. In April of 1986, the Appaloosa Horse Club notified Bacon that blood tests excluded Dandy Impression as having sired the foal to which Musette gave birth. Bacon brought suit.

In her first point of error, Cronin asserts that there was no evidence or insufficient evidence to support a finding of deceptive trade practices because the evidence only supported a breach of contract. Cronin argues that this is a simple breach of contract case, and thus, there can be no finding of deceptive trade practices. Cronin further asserts that if the damages sought are for a breach of duty under the contract, rather than for a breach of duty imposed by law, then the claim is one only for a breach of contract. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991).

The service contract stated that "Jack Bacon HAS ENGAGED ONE SERVICE TO Dandy Impression ... FOR THE MARE Diamondot Musette ... FOR THE 1984 SEASON AT $1,500.00." Cronin asserts that the only misrepresentations pertain to the performance of the stallion service contract.

Bacon argues that Cronin and Barefoot Farms did more than breach the stallion service contract. He asserts that his claims under the D.T.P.A. were separate and distinct from the service contract and concerned conduct independently actionable under the D.T.P.A. We must decide whether there was more than a scintilla of evidence that supported the D.T.P.A. claim.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

In answer to Question No. 3, the jury found that Barefoot Farms had engaged in false, misleading, or deceptive acts or practices which were the producing cause of damage to Bacon. And further, that Barefoot Farms failed to comply with warranties made regarding the contract.

First, we must consider the evidence showing false, misleading, and deceptive practices. There was evidence that Barefoot Farms delivered Musette to Bacon under the false pretense and representation that she had been bred to Dandy Impression. Bacon testified that he paid the final amount on the stallion service contract af-

---

1. The trial court granted appellant's motion in one part only: pertaining to that portion of the various Jury Questions wherein the jury awarded $16,500.00 for "[d]ifference, if any, in the market value, of breeding services rendered by Barefoot Farms and in the value of the services that Barefoot Farms agreed to render under the stallion service contract."

ter he had been told that his mare had been bred to Dandy Impression. Further, Barefoot Farms failed to disclose and fraudulently concealed the fact that Musette had been bred to another stallion. The evidence shows that Barefoot Farms and Cronin went outside their breach of contract and engaged in false, misleading, and deceptive acts.

■ Secondly, the jury found Barefoot Farms failed to comply with the warranties regarding the contract. The Texas Supreme Court has held that a defendant could breach the implied warranty of good and workmanlike performance in connection with service contracts. *Archibald v. Act III Arabians,* 755 S.W.2d 84, 86 (Tex. 1988). The evidence showed that Musette was not bred to Dandy Impression. There is evidence of probative force to support the finding of the jury.

■ Cronin also asserts under this point that there is insufficient evidence to support the jury's finding under the D.T.P.A. An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

■ The jury found that Barefoot Farms had engaged in deceptive practices by representing that the services of Barefoot Farms would include benefits that they did not include. There was evidence that Barefoot Farms told Bacon that Musette had been bred to Dandy Impression, and fraudulently delivered that mare to Bacon under the impression that she was in foal by Dandy Impression. There was no evidence that Barefoot Farms did not make this representation to Bacon. The evidence is not so overwhelming to the contrary that this jury finding should be set aside. Having considered all the evidence the jury's finding should not be set aside. Cronin's first point of error is overruled.

In her second, third, and fourth points, Cronin argues that there was no evidence or insufficient evidence to support the jury's finding on fraud, breach of contract, and negligence. Since we have found that there was sufficient evidence on the jury's answers to the D.T.P.A. question, we deem it unnecessary to address the remaining causes of action. The D.T.P.A. claim is the cause of action upon which judgment was entered. Even after we modify the judgment appellee would not receive any more money on the other causes of action. Thus, affirming the D.T.P.A. point still gives Bacon the right to a judgment on the theory entitling him to the greatest or most favorable relief. *Boyce Iron Works v. S.W. Bell Tel.,* 747 S.W.2d 785, 787 (Tex. 1988). Cronin's second, third, and fourth points of error are overruled.

■ In her fifth and sixth points of error, Cronin asserts that the trial court erred in awarding attorney's fees and damages. However, the stallion service contract and the D.T.P.A. allow reasonable and necessary attorney's fees. Cronin asserts that because this is a simple breach of contract case, D.T.P.A. damages may not be allowed. However, because of our holding that there was sufficient evidence to support the jury's D.T.P.A. finding, Cronin's assertion is incorrect.

■ Additionally, the trial court granted Bacon judgment for attorney's fees as follows:

[T]he further sum of Seven Thousand Five Hundred Dollars ($7,500.00) in the event of an appeal to the Court of Civil Appeals, and the further sum of Two Thousand Five Hundred Dollars ($2,500.00) in the event of an appeal to the Supreme Court of Texas.

Cronin argues that appellate attorney's fees cannot be inserted in the trial court judgment as an increase, but can only be allowed as a credit. However, this court in *Wuagneux Builders v. Candlewood Builders,* found the trial court's award of attorney's fees in this manner was proper. *Wuagneux Builders v. Candlewood Builders,* 651 S.W.2d 919, 922 (Tex.App.—Fort Worth 1983, no writ).

Cronin also argues that there is no evidence to support mental anguish, and further that it is not recoverable in a breach of contract case. The jury found that Cronin's knowing violation of the D.T.P.A. caused Bacon to suffer mental anguish damages in the sum of $20,000.00. In Texas, a party may recover damages for mental anguish without having suffered any physical injury. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 654 (Tex.1987). The jurors are deemed best able "to determine whether and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience." *Id.* There was testimony at trial that Bacon was angry about the damage to his mare caused by Barefoot Farms.

"Mental anguish" as an element of damages implies a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation. *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

When asked how it felt to have his prized mare bred to another stallion Bacon answered that he was "[p]robably about as angry as I have ever been." He stated further, "I don't know who is responsible, but the people that, at Barefoot Farms, that conducted the breeding operation down there, something went wrong, and I'm so angry about it." Anger is clearly not enough to recover for mental anguish. *Id.* The subjective mental symptoms to which plaintiff testified reflect no more than mere vexation, frustration, or anger. *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). This portion of Cronin's point of error is sustained.

Finally, Cronin asserts that there was no evidence or insufficient evidence to support the jury's finding of damages for transportation expense, mare care, blood tests, registration fee, and the training fee because there was no causal connection between the acts of Cronin and these expenses. There was evidence at trial that Bacon would not have paid Barefoot Farms any of the fees or incurred any of the expenses awarded by the jury if he had known of the fraud perpetrated by Barefoot. After having considered all the evidence, we find that there was some evidence to support the jury's finding which is not so weak it should be set aside. Cronin's argument as to mental anguish is sustained, the remainder of her fifth and sixth points of error are overruled.

In his sole cross-point, Bacon asserts the trial court erred in granting Cronin's motion to disregard the jury's findings and for judgment non obstante veredicto concerning the award of $16,500.00 for the difference in market value of breeding services rendered by Barefoot Farms. Bacon contends that he presented expert testimony concerning the probable market value of a foal sired by Dandy Impression.

In reviewing a grant of a motion to disregard jury findings or judgment n.o.v., the appellate court must review all testimony in the light most favorable to the verdict or finding, considering only the evidence and reasonable inferences that support the finding and rejecting all evidence and inferences contrary to the finding. *Best v. Ryan Auto Group*, 786 S.W.2d 670, 671 (Tex.1990) (per curiam); *Schaefer v. Texas Emp. Ins. Ass'n*, 612 S.W.2d 199, 201 (Tex.1980). In reviewing all evidence which supports the jury's award of $16,500.00, we must first look at the expert testimony presented by Bacon. It was undisputed at trial that a foal born to Musette and sired by Dandy Impression would have been very valuable. In fact, George Minic, an expert in the valuation of Appaloosa horses, testified that if Musette had been bred to Dandy Impression the resulting foal, based upon a reasonable probability, would have had a value of between $50,000.00 and $75,000.00. Minic also testified that an unborn foal being carried by Musette, if sired by Dandy Impression, would

have a market value of between $12,000.00 and $50,000.00.

In order for a trial court to grant a motion to disregard jury findings or a motion for judgment n.o.v., the court must determine that there was no evidence to support the jury's findings. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Arch Constr., Inc. v. Tyburec,* 730 S.W.2d 47, 51 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). In the present case, we find there to be more than a scintilla of competent evidence to support the jury's finding that the difference in market value of breeding services rendered by Barefoot Farms and in the value of the services that Barefoot Farms contractually agreed to render was $16,500.00; therefore, we sustain Bacon's cross-point.[2]

The judgment of the trial court should be reduced insofar as it includes any award for mental anguish and then augmented by $16,500.00 in order that such reflect the jury's disregarded finding for Bacon. For the reasons stated *supra,* the judgment of the trial court is reversed and the cause is remanded with instructions to render judgment on the verdict in accordance with this opinion.

---

**2.** Where some evidence supports the disregarded finding, the reviewing court must reverse and render judgment. *Basin Operating Co. v. Valley Steel Prod.,* 620 S.W.2d 773, 776 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.); *see also Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309 (Tex.1986).